# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Humphreys, O'Brien and Raphael

RYAN BERRY

                                         MEMORANDUM OPINION[*] BY
v.      Record No. 0705-21-3                  JUDGE STUART A. RAPHAEL
                                             APRIL 12, 2022

ROANOKE CITY DEPARTMENT
 OF SOCIAL SERVICES

### FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
David B. Carson, Judge

(Hyatt Browning Shirkey; Hyatt Browning Shirkey Law Firm, on
brief), for appellant. Appellant submitting on brief.

(Timothy R. Spencer, City Attorney; Jennifer L. Crook, Assistant
City Attorney; Phillip R. Lingafelt, Guardian *ad litem* for the minor
child; Glenn Feldmann Darby & Goodlatte, on brief), for appellee.
Appellee and Guardian *ad litem* submitting on brief.

Ryan Berry appeals the circuit court's order terminating his residual parental rights to his

son and approving the foster-care goal of adoption. Berry argues that the court erred in finding

under Code § 16.1-283(C)(2) that the Roanoke City Department of Social Services made

reasonable and appropriate efforts to help him remedy the conditions that required his son's

foster-care placement. He also claims that the court improperly relied on hearsay to find clear

and convincing evidence of child abuse or neglect under Code § 16.1-283(B). Finding no error,

we affirm.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

In an appeal of a decision terminating parental rights, this Court must review the evidence in the light most favorable to the party that prevailed in the circuit court—in this case, the Department. *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 550-51 (2018). We recite the facts according to that familiar appellate standard.

Berry is the biological father of the eleven-year-old child involved in this case. Berry took primary custody of the child in early 2019.[2] The Department became involved with the family when it received a report that the child had not been picked up from school and that the school could not contact Berry. Berry also failed to pick up the child from school the next day, and the school again was unable to reach him.

Three months later, the Department received a report that Berry was in a relationship with C.B., who was reportedly caring for the child even though she had a pending case with Franklin County Child Protective Services and had tested positive for methamphetamine. The Department visited the hotel where C.B. and the child were living and determined that the child needed a new placement. Berry was not present but consented by phone to allow the child to stay with his friend, H.E. The next day, H.E. informed the Department that she could no longer care for the child and that Berry had contacted her several times during the night, asking her to

---

[1] Although the record is sealed, this appeal requires unsealing certain portions to resolve the issues raised by Berry. We unseal the record only as to those specific facts mentioned in this opinion. The remainder "remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

[2] During the first eight years of the child's life, the child lived with his biological mother, Shakia Love, a North Carolina resident. In February 2019, Love contacted Berry to tell him that she would no longer care for the child. Although Love subsequently petitioned for custody, the North Carolina Department of Social Services could not recommend placing the child with her because she failed to provide the information it requested to assess her petition. The Roanoke City Department of Social Services also requested that Love's parental rights be terminated based on her alleged lack of compliance and hostility towards the Department. Love's parental rights are not at issue in this case.

give the child back to him. As the Department could not reach Berry about another placement, the Department took emergency custody of the child on July 12, 2019.

The juvenile and domestic relations district court ("J&DR court") entered a preliminary removal order on July 18, 2019, placing the child temporarily in the custody of the Department. The order indicates that Berry was present and represented by counsel and that the appointed guardian *ad litem* was present on behalf of the child. At the first permanency-planning hearing, the J&DR court approved the Department's foster-care plan and transferred custody of the child to the Department with the goal of returning the child to Berry's home. Berry was allowed visitation at the discretion of the Department.

Once the child entered foster care, the Department required Berry to participate in services and to complete certain requirements, including a substance-abuse assessment and random drug screening. He had to comply with the terms of his outstanding probation. He also had to maintain appropriate housing and verifiable income. And he was expected to attend visitation with the child.

Berry did not comply with any of those requirements and was incarcerated for all but three months from July 2019 to June 2021.[3] The Department suspended Berry's weekly visitations in October 2019 because he kept missing scheduled visits, even when he was not incarcerated.[4] Berry's last contact with the Department took place on August 11, 2020, when he left a voicemail providing the Department a phone number at which to contact him. When the

---

[3] Berry was incarcerated at least six separate times during the first fifteen months following the child's placement into foster care in July 2019.

[4] The Department could not inform Berry that the visitations had been suspended because Berry's phone number was no longer in service and he had not provided the Department with a mailing address. Even so, Berry failed to attend the previously scheduled visits in October and November 2019.

Department called that number, however, it turned out to belong to Berry's mother, who said she had no way to reach him.

Due to Berry's failure to comply with the requirements imposed to regain custody, the Department petitioned to terminate his parental rights. Certifying that Berry's whereabouts were unknown and that he could not be found, the Department served Berry by publication notice. Five days before the hearing, however, the Department notified the J&DR court that it had discovered that Berry was incarcerated in West Virginia; the Department attempted to notify him there. On November 10, 2020, the J&DR court entered an order terminating Berry's residual parental rights under Code § 16.1-283(B) and (C)(2).

Berry timely appealed those rulings to the circuit court, which conducted a trial on June 14, 2021. Berry appeared by video and was represented by counsel.

At the outset, the circuit court asked that any hearsay objections to the Department's exhibits be raised when the exhibit was offered into evidence.[5] The Department moved to admit into evidence its Exhibit 1, consisting of thirty-six pages of intake forms and narratives from the Department's reports. Berry objected to any hearsay in the exhibit, and the court admitted the exhibit subject to that objection. Soon after, the Department offered its Exhibit 2, consisting of eighty-seven pages of judicial records filed with the emergency-removal order. After Berry's counsel said, "No objection, Judge," the court admitted Exhibit 2 "without objection."

The Department presented testimony that Berry failed to complete his substance-abuse assessment, failed to comply with random drug screenings, failed to attend and engage in scheduled visitation with his son, failed to maintain stable and appropriate housing, failed to maintain a stable source of income, and failed to cooperate with services requested by the

---

[5] The parties agreed that the documents were authentic and that it was unnecessary for any Department witness to appear solely to authenticate them.

- 4 -

Department. Berry's counsel elicited testimony from the Department's witness that the week before the November 10, 2020 hearing in the J&DR court, the Department discovered that Berry was incarcerated in West Virginia and had attempted to serve him with court papers.[6] In December 2020, the Department mailed a letter to the last home address it had for Berry. The Department's witness testified that she was unaware at that time that Berry was still incarcerated. The letter was returned undelivered. After that, the Department did not send letters to Berry at the West Virginia prison.

Berry raised specific hearsay objections to testimony from the Department's witness that the child had been left at school and that there was a report that Berry was in a relationship with a person who had tested positive for an illegal substance. At first, the court said that it would not accept that testimony "for the truth of the matter" asserted. But the child's guardian *ad litem* responded that the testimony and report should be considered for the truth of those assertions because the facts were part of the judicial record from the J&DR court, already admitted into evidence. The circuit court noted that it had "not looked at [the judicial record] so [it would] accept that."

Berry testified that Covid-19 had impaired his ability to comply with the Department's requirements. He testified that he was working toward a rehabilitation program that would help him get housing and a job. In response to questioning from the child's guardian *ad litem*, however, Berry admitted that he had been incarcerated for all but three months of the last two years.

---

[6] Berry had been imprisoned in West Virginia since September 11, 2020.

After hearing the evidence and arguments, the circuit court found by clear and convincing evidence that it was in the child's best interests to terminate Berry's parental rights under Code § 16.1-283(B) and (C)(2) and to approve the foster-care goal of adoption.

Berry timely appealed to this Court.

ANALYSIS

"[I]t would be unfitting to not acknowledge that '[t]he termination of parental rights is a grave, drastic and irreversible action.'" *Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 375, 400 (2012) (quoting *Helen W. v. Fairfax Cnty. Dep't of Human Dev.*, 12 Va. App. 877, 883 (1991)). Even so, the "trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 558 (2018) (quoting *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011) (quoting *Martin v. Pittsylvania Cnty. Dep't of Soc. Servs.*, 3 Va. App. 15, 20 (1986)).

The circuit court terminated Berry's parental rights under Code § 16.1-283(B) and (C)(2), finding clear and convincing evidence under both subsections, either one of which could support the decision below. Analyzing the two grounds in reverse order, consistent with Berry's arguments, we find no reversible error.[7]

---

[7] On appeal, the guardian *ad litem* for the child joins with the Department in seeking affirmance of the circuit court's judgment.

*A. Termination under Code § 16.1-283(C)(2)*

Code § 16.1-283(C)(2) states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or
> unable within a reasonable period of time not to exceed 12 months
> from the date the child was placed in foster care to remedy
> substantially the conditions which led to or required continuation
> of the child's foster care placement, notwithstanding the
> reasonable and appropriate efforts of social, medical, mental health
> or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." *Yafi*, 69 Va. App. at 552 (quoting *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 271 (2005)). The "reasonable and appropriate efforts" contemplated by Code § 16.1-283(C)(2) "can only be judged with reference to the circumstances of a particular case." *Harrison v. Tazewell Cnty. Dep't of Soc. Servs.*, 42 Va. App. 149, 163 (2004) (quoting *Ferguson v. Stafford Cnty. Dep't of Soc. Servs.*, 14 Va. App. 333, 338 (1992)). "Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." *Id.* (quoting *Ferguson*, 14 Va. App. at 338-39).

Berry claims that the circuit court erred in finding that the Department made reasonable and appropriate efforts to help him remedy the conditions that required foster-care placement. He argues that the Department did not contact him after November 3, 2020. He also claims that his ability to participate in services was hindered by the Covid-19 pandemic, requiring additional time to complete services.

The circuit court did not err in rejecting those arguments.

The court could properly find from the evidence that the Department offered services to Berry to meet its requirements, including a substance-abuse assessment and opportunities to visit the child, and that Berry failed to avail himself of those services, both before and after the

Covid-19 pandemic. The Department attempted to contact Berry multiple times during the child's stay in foster care, but Berry failed to provide accurate contact information. Although Berry blames the Department for not contacting him after November 2020, Berry himself had not contacted the Department since August 2020. The Department "is not required to force its services upon an unwilling or disinterested parent." *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 323 (2013) (citing *Harris v. Lynchburg Div. of Soc. Servs.*, 223 Va. 235, 243 (1982)); *see also Logan*, 13 Va. App. at 130 (quoting *Barkey v. Commonwealth*, 2 Va. App. 662, 670 (1986)). And Berry was incarcerated for the vast majority of that period. "[A]s long as [Berry] was incarcerated, the Department would have had no avenue available to offer [Berry] services aimed at assisting him in regaining custody of the child." *Harrison*, 42 Va. App. at 164. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." *Tackett*, 62 Va. App. at 322 (quoting *Kaywood v. Halifax Cnty. Dep't of Soc. Servs.*, 10 Va. App. 535, 540 (1990)).

In short, the circuit court could find from the evidence that the Department made reasonable and appropriate efforts under the circumstances to help Berry remedy the conditions that required foster-care placement.

### *B. Termination under Code § 16.1-283(B)*

Code § 16.1-283(B) permits the termination of residual parental rights

> if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:
>
> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the

court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

Berry claims that the circuit court erred in terminating his parental rights under this subsection, arguing that the court improperly relied on inadmissible hearsay testimony—that the child was left at school and lived in a hotel with a woman testing positive for an illegal substance. His argument addresses only the hearsay question. Berry contends that, "[b]y not being admitted for the truth of the matter asserted, no evidence before the court was clear and convincing evidence of abuse or neglect." In other words, Berry does not dispute that *if* that evidence were properly admitted (and taken together with other evidence considered by the court), it would support the court's abuse-or-neglect finding.

Berry's hearsay objection falls short because the same facts he says should have been excluded were expressly admitted without objection as part of the Department's Exhibit 2. The trial judge asked for any hearsay objections to the Department's exhibits to be stated when the exhibits were offered into evidence. Although Berry objected to any embedded hearsay when Department's Exhibit 1 was admitted into evidence, he affirmatively disclaimed any objection to the admission of the Department's Exhibit 2. It is "well established" that a party cannot avail himself of an evidentiary objection if, "at some other time during the trial" he "permitted it to be brought out by [the opposing party] without objection." *Stevens v. Commonwealth*, 72 Va. App. 546, 557 (2020) (quoting *Burns v. Bd. of Supervisors*, 227 Va. 354, 363 (1984)). Accordingly, his hearsay objection has been waived.[8]

---

[8] As for Berry's challenge of the foster-care goal of adoption, "[o]ur decision to affirm the termination order necessarily subsumes this aspect of his appeal because a preponderance-of-the-evidence standard governs judicial modifications of foster care plans." *Toms*, 46 Va. App. at 265 n.3.

CONCLUSION

Considering the totality of the evidence in the light most favorable to the Department, the circuit court did not err in terminating Berry's parental rights under either Code § 16.1-283(B) or (C)(2).

*Affirmed.*